IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TIMOTHY D. PARHAM,                    §
                                      §
                    Plaintiff,        §
                                      § Civil Action No. 3:05-CV-1043-D
VS.                                   §
                                      §
JO ANNE B. BARNHART,                  §
COMMISSIONER OF SOCIAL                §
SECURITY,                            §
                                      §
                    Defendant.        §

<u>MEMORANDUM OPINION</u>

Plaintiff Timothy D. Parham ("Parham") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits under title II of the Act. The administrative law judge ("ALJ") found that Parham is not disabled because he retains the residual functional capacity ("RFC") to perform his past relevant work, as it is performed in the national economy. For the reasons that follow, the court affirms in part, and vacates and remands in part, the Commissioner's decision.

I

Parham was born in November 1958, has a high school education, and has previously worked as a photographer, furniture restorer/refinisher, courier, and maintenance person. He applied for disability insurance benefits in May 1999, contending that he

became disabled in November 1998 due to a back injury and a mental impairment. His claim was denied initially and on reconsideration, and he requested and received a hearing before an ALJ. The ALJ conducted hearings in 2000 and 2001 and denied his claim. Parham sought review, and in 2002 the Appeals Council remanded for another hearing. Following a third hearing in 2003, the ALJ again denied his claim.

The ALJ concluded in a written decision that Parham was not disabled. He determined at step four of the five-step sequential process that Parham has the RFC to perform light work activity because he can stand and walk for two or more hours a day and perform the basic mental demands of competitive, remunerative, unskilled work. The ALJ concluded that Parham's RFC does not prevent him from performing his past relevant work as a photographer, as generally performed in the national economy, and that he therefore is not disabled under the Act.

Parham sought review by the Appeals Council, which denied his request. The ALJ's decision thus became the final decision of the Commissioner, and Parham now seeks judicial review.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th

Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).   "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnote omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).   "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed."   *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).   "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983)).   Even if the court should determine that the evidence preponderates in the claimant's

favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2005). "The burden of proof is on the claimant for the first four steps,

but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a

- 5 -

procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

                                    III

Parham contends the ALJ erred in rejecting the opinions of Parham's treating physicians and in failing to acknowledge all restrictions imposed by the treating and other physicians.  He addresses first the opinion of Juan Macho, M.D. ("Dr. Macho"), who treated him for his back problems.

                                     A

Parham began seeing Dr. Macho for his back pain in June 1995 and continued under his care through at least August 2002.  Dr. Macho diagnosed Parham with degenerative disc disease.  In June 2000 Dr. Macho assessed Parham as having the ability to sit only for two hours out of an eight-hour workday, stand and/or walk for less than one hour out of an eight-hour workday, lift up to 10 pounds occasionally, and rarely or never lift more than 10 pounds. Dr. Macho found in a Physical Capacities Evaluation that Parham's impairment would last indefinitely.  These restrictions would indicate that Parham is unable to perform light work, which is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" or that may "require[ ] a good deal of walking or standing, or . . . sitting most of the time."  20 C.F.R. § 404.1567(b)

                                  - 6 -

(2005).

The ALJ rejected Dr. Macho's opinion in part because he found that it "was based on [Parham's] exaggerated self-reports." R. 30. The ALJ based this conclusion on an interview Parham had with David E. Faris, Ph.D. ("Dr. Faris"), a psychologist Parham saw in December 2000. The ALJ summarized Dr. Faris' evaluation as follows:

> Dr. Faris' description of the interview with [Parham] did not demonstrate [Parham] was experiencing chronic pain with his logical thinking and decisions. [Parham] remarked how he was glad to have someone to "talk to" and even discussed at that time his finances and having another roommate to help defray expenses. Dr. Faris remarked how [Parham] had had no recent panic attack, but he stated how [Parham's] physical condition was his primary disabling condition.

*Id.*

The ALJ also declined to accept Dr. Macho's opinion because he afforded great weight to the opinion of Dubose Murray, M.D. ("Dr. Murray"), a consulting physician who examined Parham in July 2000. In his report, Dr. Murray concluded that Parham's X-rays indicated a "noted narrowing of the L4-L5 interspace and some osteophytic lipping of a mild nature on the lateral view of L4-L5 also between L3 and L4 without any particular joint narrowing noted." *Id.* at 521. He also observed that "[t]here is no evidence of spondylolysis or spondylolisthesis noted." *Id.* Dr. Murray's impression was that Parham had a "[n]arrowing of the L4-L5

interspace with minor osteoarthritic lipping noted." *Id.*   He concluded that "[w]hile the physical findings are not remarkable in reference to reflexes, motor weakness or sensory changes," Parham was "having back difficulty and pain at this time." *Id.*   Dr. Murray recommended that Parham request a myelographic examination and stated that "[i]f the myelogram showed occult surgical pathology, this could be addressed.   Otherwise, if it were not remarkable, then continued conservative treatment would be recommended." *Id.* at 522.   Dr. Murray assessed Parham as having the ability to lift and/or carry up to 20 pounds frequently, to stand or walk for two to six hours in an eight-hour day, and to sit for fewer than six hours in an eight-hour workday. *Id.* at 526.[1]

The ALJ also discussed other evidence in the record.   He mentioned that in May 1999 a chiropractor had indicated that Parham could not perform more than sedentary work, but the ALJ noted that Parham had not yet reached maximum medical improvement at that time.   He also cited a January 2001 report from the Multi-

---

[1]Parham contends it is unclear how long Dr. Murray believed he could stand and/or walk because of changes he made in the Medical Assessment Form.   He maintains that if this was unclear to the ALJ, he should have recontacted Dr. Murray for clarification of this point, pursuant to the requirements of 20 C.F.R. § 404.1512(e)(1). After reviewing the Medical Assessment Form, however, it is clear that Dr. Murray checked both the circle that states "At least 2 hours in an 8 hour workday" and the circle that states "About 6 hours in an 8 hour workday" and handwrote the word "to" between the circles, indicating that he believed Parham could stand or walk for at least two and no more than about six hours in a workday. *See* R. 526.

Disciplinary Spine Clinic that stated that Parham could return to activity as tolerated, and in August 2002 there was evidence of deficits, but not to the point of disability, and to an August 6, 2002 hospital record that reflected that Parham works part time. Based on this evidence, the ALJ gave great weight to Dr. Murray's opinion.

B

Parham argues on several grounds that the ALJ erred in his decision.  He maintains that it was inappropriate for the ALJ to reject the opinion of a treating physician based solely on reports of another physician; that nothing in Dr. Faris' report indicates that he believed Parham was exaggerating in any way; that the ALJ's interpretation that Parham was exaggerating is an unwarranted extrapolation from the evidence; and that because Dr. Faris is not a medical doctor, it is unreasonable to expect a deep discussion of Parham's physical problems in his reports.  Parham also contends that the ALJ did not allude in his decision to certain underlying records from Dr. Macho and from Parkland Hospital and, while referring to certain physical limitations that Dr. Macho imposed, did not mention several others.  He posits that the ALJ erred by failing to follow Dr. Macho's opinion that Parham meets the requirements for a listing that has since been removed, and that it is instructive, if not dispositive, that other providers shared Dr. Macho's opinions.  Parham also argues that the ALJ mischaracterized

the evidence in various contexts, and that, although the ALJ discussed the report of Dr. Murray, his summary of the report is incomplete, which is critical given the great weight the ALJ assigned to it.  He asserts that it is unclear how long Dr. Murray believed Parham could stand and/or walk because of changes he made in the Medical Assessment Form, and that if this was unclear to the ALJ, he should have recontacted Dr. Murray for clarification, under the requirements of 20 C.F.R. § 404.1512(e)(1).  Parham argues that if the ALJ intended to rely on Dr. Murray's statements, he should have made all the restrictions, not just some, part of the RFC that the ALJ created.  He argues that the extent of the limitations raises the necessity of a vocational specialist, which is of itself sufficient to warrant a remand.  Parham also complains that, when discussing the opinion of Chris Holowiski, D.C., the ALJ overlooked portions of the opinion, he made an incomplete reference to a passage from the report of the Multi-Disciplinary Spine Clinic, and he failed to note important items of objective evidence.

C

As a threshold matter, the court notes that Parham does not explain why the grounds on which he relies demonstrate that the ALJ committed reversible error in evaluating his physical limitations.  *Cf., e.g.,* P. Br. 18 (explicitly asserting that ALJ's recitation of requirements of 20 C.F.R. § 404.1529 is insufficient to satisfy requirements of SSR 96-7p).  Nor does he specify the applicable

standard of review that governs the arguments he makes.[2]  It is not enough for Parham to advance the general assertion that the ALJ erred.  Reversal of the ALJ's decision is appropriate "only if the applicant shows that he was prejudiced." *Ripley*, 67 F.3d at 557. And as noted above, the court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith*, 962 F. Supp. at 984. Generally, when a social security plaintiff "does not otherwise identify the legal standard under which [he] seeks review, the court . . . will address [his] arguments under the settled principles that resolution of conflicting evidence is for the Commissioner and that the court must affirm the Commissioner's findings if they are supported by substantial evidence." *LeCoq v. Barnhart*, No. 3:04-CV-0825, slip op. at 12 (N.D. Tex. Aug. 24, 2005) (Fitzwater, J.) (citations omitted).

Parham has failed to make the required showing of reversible error based on the ALJ's decision not to accept Dr. Macho's opinion or on the other grounds that he advances.  "A treating physician's

---

[2]In his reply brief, Parham cites SSR 96-7p to contend that the ALJ did not consider important items of objective evidence and that the ALJ was obligated to discuss the objective medical and other evidence thoroughly in his RFC assessment.  *See* P. Reply Br. 4.  If Parham intends by this argument to identify a basis for arguing legal error or a standard of review, the court declines to consider arguments raised for the first time in a reply brief.  *See LeCoq v. Barnhart*, No. 3:04-CV-0825, slip op. at 7 n.1 (N.D. Tex. Aug. 24, 2005) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)).

opinion on the nature and severity of a patient's impairment will
be given controlling weight if it is 'well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with . . . other substantial evidence.'"   *Newton v.*
*Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (ellipsis in original)
(quoting *Martinez*, 64 F.3d at 176).

> Even though the opinion and diagnosis of
> a treating physician should be afforded
> considerable weight in determining disability,
> the ALJ has sole responsibility for
> determining a claimant's disability status.
> The ALJ is free to reject the opinion of any
> physician when the evidence supports a
> contrary conclusion.  The treating physician's
> opinions are not conclusive.  The opinions may
> be assigned little or no weight when good
> cause is shown.  Good cause may permit an ALJ
> to discount the weight of a treating physician
> relative to other experts where the treating
> physician's evidence is conclusory, is
> unsupported by medically acceptable clinical,
> laboratory, or diagnostic techniques, or is
> otherwise unsupported by the evidence.

*Id.* at 455-56 (citations, quotation marks, and brackets omitted).
An ALJ can therefore rely on the opinion of a consulting examining
physician instead of the contrary opinion of a treating physician
when there is reliable medical evidence to support the consulting
examining physician's opinion.  *See id.* at 453 ("[A]bsent reliable
medical evidence from a treating or examining physician
controverting the claimant's treating specialist, an ALJ may reject
the opinion of the treating physician *only* if the ALJ performs a
detailed analysis of the treating physician's views under the

- 12 -

criteria set forth in 20 C.F.R. § 404.1527(d)(2).").

This is a case in which the ALJ accepted the opinion of the consulting examining physician and other evidence over the opinion of the treating physician and other evidence that would have permitted the ALJ to find in plaintiff's favor. The ALJ did not commit reversible error in doing so, because his decision is supported by substantial evidence. "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id*. at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Dr. Murray's opinion constitutes substantial evidence that Parham is not physically disabled because it is supported by medically acceptable clinical and laboratory diagnostic techniques, a reasonable mind might accept it to support the conclusion of non-disability, and it is more than a scintilla. Dr. Murray conducted an orthopaedic and neurological examination of Parham in July 2000 for 30 minutes and reviewed AP and lateral X-rays of his lumbar spine. He concluded that Parham can frequently lift and/or carry up to 20 pounds, stand or walk for at least two, and no more than about six, hours in an eight-hour day, and sit fewer than six hours in an eight-hour workday. This opinion constitutes substantial evidence that supports the ALJ's finding that Parham can perform light work, i.e., work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" or that

may "require[ ] a good deal of walking or standing, or . . .
sitting most of the time." 20 C.F.R. § 404.1567(b). Because Dr.
Murray's opinion, combined with other evidence in the record,
including Parham's statements to Dr. Faris, constitutes substantial
evidence to support his finding that Parham is not disabled, the
ALJ did not err in rejecting Dr. Macho's opinion and the other
evidence that Parham cites. Nor do any of Parham's other arguments
support reversing the decision of the ALJ in this respect.
Accordingly, this ground of the ALJ's decision——i.e., finding that
Parham is not disabled based on his physical limitations——is
affirmed.

IV

    Parham advances as the second broad basis for this argument
the contention that the ALJ erred in rejecting the opinion of his
main treating psychiatrist, Antonio Roman, M.D., ("Dr. Roman"), who
diagnosed Parham with severe chronic depression and anxiety
disorder related to pain.

A

    Parham began receiving psychiatric services in January 2001.
His chief complaint at the time of his initial visit was depression
and panic attacks. His treating psychiatrist, Dr. Roman, assigned
at that time a Global Assessment of Functioning ("GAF") score of
50. In February 2003 Dr. Roman stated in a letter that Parham
suffers from severe chronic depression and anxiety related to pain

and that he does not appear to respond/benefit from current medical/psychiatric treatment.  R. 634.  In January 2003 Dr. Roman completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)."  His assessment contains specific findings that show that Parham meets the requirements for Listings 12.04 and 12.06.[3]

The ALJ found that Parham's mental impairments are not severe enough to meet or medically equal a Listing.  Concerning Parham's mental impairment, he concluded that "[t]here is no documentation of treatment in a psychiatric hospital[ ]" and  "no documentation that [Parham's] mental impairment has had more than a mild impact on the activities of daily living or on concentration, persistence, or pace, or more than a moderate impact on social functioning, and there have been no episodes of decompensation."  *Id.* at 30.  In other words, the ALJ found that Parham does not meet the B criteria of Listings 12.04 or 12.06.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04 & 12.08 (2005).  The ALJ considered Dr. Roman's opinion but gave it little weight due to contradictions in the ratings he set forth in his report.  The ALJ noted that Dr. Roman found Parham "to have unlimited and good ability in carrying out simple and detailed job instructions and fair ability to carry out complex job instructions," yet Dr. Roman rated Parham "as having

_____

[3]The form was specifically designed to address the factors in these Listings.

- 15 -

marked difficulties in maintaining concentration, persistence, or pace." R. 30. Moreover, although Dr. Roman rated Parham "as good in dealing with the public and relating to coworkers and supervisors," Parham's rating was "poor in relating predictably in social situations and behaving in an emotionally stable manner," and Parham had "marked difficulties in social functioning." *Id.* Because of these perceived contradictions, the ALJ gave Dr. Roman's opinion little weight and instead relied more on Parham's own testimony as to his functional abilities, e.g., his part-time work, occasional driving, and personal hygiene. He concluded that Parham's "mental impairment does not significantly erode his residual functional capacity and would not preclude unskilled work activity." *Id.* at 31.

B

Parham contends, in relevant part, that the ALJ erred in failing to follow Dr. Roman's opinion that Parham meets the requirements for Listing 12.04 or 12.06. Before the court can adequately address this argument, it must analyze whether the ALJ sufficiently addressed the six factors contained in 20 C.F.R. § 404.1527(d). Because Dr. Roman was Parham's treating physician for his mental impairment, the ALJ was obligated to give his "opinion on the nature and severity of [Parham's] impairment . . . controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

- 16 -

inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (second ellipsis in original) (quoting *Martinez*, 64 F.3d at 176). Although "[t]he ALJ is free to reject [Dr. Roman's opinion] when the evidence supports a contrary conclusion," *id.* (quoting *Paul*, 29 F.3d at 211), "[b]efore the ALJ declines to give a treating physician's opinion controlling weight, however, § [404.]1527(d)(2) requires that he 'give good reasons' for the weight given to the treating source's opinion." *Sailsbury v. Comm'r*, 2003 U.S. Dist. LEXIS 21327, at *10 (N.D. Tex. Oct. 31, 2003) (Fitzwater, J.).

> Under § 1527(d) he must consider the following six factors: "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician."

*Id.* (quoting *Newton*, 209 F.3d at 456). "Several federal courts have concluded that an ALJ is required to consider each of the § 404.1527(d) factors when the ALJ intends to reject or give little weight to a treating specialist's opinion." *Newton*, 209 F.3d at 456 (collecting cases). *Newton*-type error supports reversal, however, only when there is error and the plaintiff has suffered prejudice. *See Mettlen v. Barnhart*, 88 Fed. Appx. 793 (5th Cir. 2004) (per curiam) (unpublished opinion) ("In order to obtain reversal, [plaintiff] must show both error and some resulting

- 17 -

prejudice."). "Prejudice can be established by showing that the additional considerations '"might have led to a different decision."'" *Id.* (quoting *Newton*, 209 F.3d at 458). Here, the possibility of prejudice is shown because, had the ALJ given controlling weight to Dr. Roman's opinion, he apparently would have been required to find at step three of the sequential process that Parham is disabled, i.e., that his mental impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4.

The ALJ rejected Dr. Roman's assessment of Parham's mental limitations on the basis that it was internally contradictory and inconsistent with Parham's reported daily activities. The court is unable to conclude, however, that the ALJ considered any evidence of an examining or treating physician that controverted Dr. Roman's assessment. Absent such evidence, the ALJ was not permitted to reject Dr. Roman's opinion without analyzing each § 404.1527(d) factor. *See Segovia v. Barnhart*, No. 3:04-CV-2246-D, slip op. at 14 (N.D. Tex. Aug. 9, 2005) (Fitzwater, J.). This court has vacated and remanded decisions of the Commissioner when the ALJ has rejected the opinion of a treating physician without explicitly considering the § 404.1527(d) factors and the treating physician's opinion is not controverted by reliable medical evidence from another treating or examining physician. *See, e.g.*, *id.* at 14; *Sailsbury*, 2003 U.S. Dist. LEXIS 21327, at *12. Because there is

- 18 -

no evidence in the record that Dr. Roman's opinions were controverted by reliable evidence from another treating or examining psychiatrist, the ALJ was required to analyze this case under the § 404.1527(d) factors before assigning little weight to Dr. Roman's opinions.[4]   Although the ALJ is free, of course, to find on remand that the evidence does not support the conclusion that Parham is disabled, he cannot reach this result without

---

[4]This case may lie at the outer limits of those in which the court will vacate and remand where the plaintiff has not explicitly asserted *Newton*-type error.  Typically, a plaintiff seeks judicial review on the ground that the ALJ failed to consider the § 404.1527(d) factors.  *See, e.g., Williams v. Barnhart*, 31 Fed. Appx. 833, 2002 WL 180706, at *1 (5th Cir. 2002) (unpublished opinion) (per curiam) (noting that appellant argued that ALJ should have considered the treating physician's opinion under the six factors set forth in *Newton*).  The Fifth Circuit has in fact refused to consider *Newton* error that was not adequately raised in the district court.  As the panel held in *Perez v. Massanari*,

> Perez's argument that the ALJ failed to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) is raised for the first time in this appeal.  As no exceptional circumstances have been identified, and Perez had an opportunity to raise the issue in the district court, we will not consider the 20 C.F.R. § 404.1527(d)(2) issue.

*Perez v. Massanari*, 273 F.3d 1094, 2001 WL 1085085, at *1 (5th Cir. 2001 (per curiam) (unpublished opinion).  Here, however, the record contains not only the opinion of a treating physician that would permit the ALJ to find that plaintiff is disabled, it arguably reflects specific findings of the treating physician that plaintiff meets a Listing that would *require* the ALJ to find at step three that plaintiff is disabled.  Under these narrow circumstances—and without suggesting that the court will consider forfeited *Newton*-type error in future or arguably less-compelling cases—the court concludes that the ALJ should be required to address the factors of § 404.1527(d) before rejecting the opinion of a treating physician.

assessing Dr. Roman's opinions according to the § 404.1527(d) factors.

The ALJ's rejection of Dr. Roman's opinion of Parham's *mental* limitations differs from his refusal to give controlling weight to Dr. Macho's opinion of Parham's *physical* limitations. Dr. Macho's opinion was controverted by the opinion of Dr. Murray, who performed a consulting orthopaedic and neurological examination of Parham.

> [U]nder *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2) only when there is an absence of reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist.

*Sailsbury*, 2003 U.S. Dist. LEXIS 21327, at *13 (quoting *Grimes v. Barnhart*, No. 3:01-CV-0940-D, slip op. at 12 (N.D. Tex. Mar. 18, 2002) (Fitzwater, J.); *Tipps v. Barnhart*, No. 3:01-CV-1295-D, slip op. at 11-12 (N.D. Tex. Mar. 14, 2002) (Fitzwater, J.)). Because Dr. Macho's opinion was controverted by reliable medical evidence from another examining physician (Dr. Murray), the ALJ was not required to consider the § 404.1527(d) factors.

The court therefore vacates in part and remands the Commissioner's decision.

V

Parham raises other issues on appeal. Although some of the grounds are too conclusory to justify judicial review and others do

- 20 -

not adequately address the standard of review or state why the ALJ's decision is reversible, at least some are sufficient to warrant review by this court.  The court is not addressing the adequately briefed arguments, however, because the Commissioner's decision on remand concerning Parham's mental impairments may moot them.  Nevertheless, the Commissioner may deem it advisable to take account of these arguments in reaching a decision on remand to ensure that the ruling will not be subject to another remand, if appealed.[5]

---

[5]Relatedly, the record appears to reflect another error that Parham does not raise but that the Commissioner may wish to address on remand.

> [I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton*, 209 F.3d at 453.  That regulation may require that the ALJ "seek additional evidence or clarification from" Dr. Roman because his "report . . . contains a conflict or ambiguity that must be resolved." 20 C.F.R. § 404.1512(e)(1) (2005).  There is no indication that the ALJ either sought clarification from Dr. Roman or afforded Parham an opportunity to supplement the record with additional medical evidence of his mental limitations. *Cf. Fink v. Barnhart*, 123 Fed. Appx. 146, 148 (5th Cir. 2005) (per curiam) (unpublished opinion) (holding that ALJ's failure to recontact treating physician was harmless procedural error because claimants were afforded opportunity to supplement records with additional medical reports from treating physicians).  Because Dr. Roman's report was not controverted by reliable evidence from another treating or examining psychiatrist, and because the ALJ concluded it contained internal inconsistencies that needed to be resolved,

- 21 -

*    *    *

The Commissioner's decision is AFFIRMED in part and VACATED in part and REMANDED to the Commissioner for further proceedings consistent with this memorandum opinion.

April 28, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

it arguably was error for the ALJ to afford the report little weight without first attempting to seek clarification from Dr. Roman.